IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALVERA LEWIS | * | |
| | * | |
| v. | * | Civil No. SAG-12-298 |
| | * | |
| UNIVERSITY OF MARYLAND, | * | |
| BALTIMORE | * | |
| | ****** | |

**MEMORANDUM**

Plaintiff Alvera Lewis filed this action against Defendant University of Maryland, Baltimore ("the University"), alleging that she suffered discrimination on the basis of disability, race, and gender when the University terminated her employment contract. The following motions are currently pending: the University's motion for summary judgment [ECF No. 40], Ms. Lewis's cross-motion for summary judgment [ECF No. 47], and Ms. Lewis's motion for remand [ECF No. 46]. I have reviewed the three motions and the oppositions and replies thereto. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the University's motion for summary judgment is granted, and Ms. Lewis's motions are denied.

**I.      Facts**

On December 1, 2008, Ms. Lewis began employment at the University as an administrative assistant. Ex. A (Lewis Dep.), at 27.[1] Approximately one year later, in December, 2009, Ms. Lewis injured her knee in an automobile accident. Ex. A, at 50. On January 7, 2010, Ms. Lewis suffered whiplash in a second automobile accident. Ex. A, at 49. As

---

[1] Exhibit references refer to the Exhibits to Defendant's Motion for Summary Judgment, unless otherwise noted.

a result of the whiplash, Ms. Lewis missed work from January 8, 2010 to January 27, 2010. Ex. U.

In May, 2010, Ms. Lewis told her supervisor that she required surgery on her injured knee. Ex. D (Butler Dep.), at 32. Ms. Lewis informed her supervisor that she would miss four work days because of the surgery. Ex. D, at 32. However, after the surgery, Ms. Lewis learned that the surgery had been more extensive than she had expected. Ex. A, at 130. At that time, Ms. Lewis did not know when she would be able to return to work. Ex. A, at 154. The University assigned another contract employee to fill in for Ms. Lewis on a temporary basis. Ex. S (Smith Aff.) ¶ 4.

On May 14, 2010, Ms. Lewis's husband emailed her supervisor to inform the University that Ms. Lewis had suffered complications and was unsure when she could return to work. Ex. L. On May 18, 2010, a University supervisor responded that Ms. Lewis had almost exhausted her paid leave, and asked Ms. Lewis to apply for FMLA leave. Ex. M. On June 1, 2010, Ms. Lewis's husband emailed the University the completed FMLA application with a statement that Ms. Lewis remained unable to return to work. Ex. N. The email further stated, "At this time she is unable to returen [sic] to work due to complications associated with her 4 May Surgery . . . . As soon as aditional [sic] details are available I will pass information on to you." *Id.* The Health Care Provider Certification attached to the FMLA application did not provide an expected return-to-work date or a date of next appointment. Ex. O.

On June 2, 2010, Ms. Lewis's husband sent an email to the University, stating:

> Alvera is following up with her surgeon today, and we need to know what type of accommodations can be made for her to return to work. She will likely be in a wheelchair, and will need to have a flexible work schedule for weekly appointments. Please let me know so this information can be shared with her doctor.

Ex. P.  Later that same day, Ms. Lewis's husband forwarded a doctor's note stating that Ms. Lewis "may not return to work" and that she would "be reevaluated in six weeks."  Ex. Q.

On June 4, 2010, the University's Office of Human Resource Services ("Human Resources") sent two letters to Ms. Lewis in response to her FMLA application.  One letter stated that Ms. Lewis had been approved for FMLA leave for January 8, 2010 through January 27, 2010.  Ex. U.  The other letter stated that she had been approved for FMLA leave from May 4, 2010 through July 8, 2010.  Ex. V.  Each letter provided, "You must return to work at the end of the leave; you must contact your supervisor no less than 48 hours prior to returning to work." *Id.*  Upon receiving the letters, Ms. Lewis telephoned Human Resources to ask why she had been approved for FMLA leave in January when she had not requested FMLA leave for that period. Ex. G (Owens Dep.), at 15.  Human Resources explained that under the University's FMLA policy, all leave taken for medical reasons during a 12-month period is combined to calculate an employee's 12-week total FMLA eligibility.  Ex. G, at 15.

Ms. Lewis testified that she did not return to work or contact her supervisors before her leave expired on July 8, 2010.  Ex. A, at 249-50.  On July 9, 2010, the University decided to terminate Ms. Lewis's contract for job abandonment.  On that same date, the University sent Ms. Lewis a letter notifying her that she had been terminated for failure to return to duty at the conclusion of her approved FMLA leave.  Ex. X.  The letter informed Ms. Lewis that she was welcome to apply for other positions at the University.  Ex. X.

Ms. Lewis's surgeon cleared her to return to work on July 28, 2010, more than two weeks following her termination.  Ex. Z.

## II.     Legal Standard for Summary Judgment

A motion for summary judgment is granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990).  Summary judgment is precluded only when there are disputes over the facts that might affect the outcome of the proceedings under the applicable law.  Factual disputes that are not relevant or not necessary will not be considered in a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of showing an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In response, the non-moving party must show that there is a genuine issue for trial.  A court must decide whether there is a genuine issue for trial, "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 242-43.

## III.    Analysis

### A. The University's Motion For Summary Judgment On The ADA And FMLA Claims

Counts V and VI of Ms. Lewis's Amended Complaint allege violations of two federal statutes:  the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA").  The University contends that those counts are subject to dismissal based upon the State of Maryland's sovereign immunity. Def. Mot., at 25.  The University is correct.

The doctrine of sovereign immunity, set forth in the Eleventh Amendment, bars suit against a state in federal court for monetary damages, absent a waiver of immunity or an abrogation of immunity by Congress. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001).  The University, as an arm or instrumentality of the state, qualifies for Eleventh

Amendment immunity.  *See Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 262-65 (4th Cir. 2005).

Ms. Lewis essentially concedes that the University is immune from suit for money damages on her ADA and FMLA claims.  Pl. Mot. for Remand ¶ 4.  As recognized by Ms. Lewis, certain Supreme Court cases establish the University's immunity.  *See, e.g., Coleman v. Court of Appeals*, 132 S. Ct. 1327, 1338 (2012) (holding that state is immune from FMLA suits by employee); *Garrett*, 531 U.S. at 374 (establishing immunity on ADA claims).  Summary judgment is therefore appropriate on Counts V and VI of Ms. Lewis's Amended Complaint.

### B.  Ms. Lewis's Motion for Remand

Ms. Lewis argues that, following a grant of summary judgment as to her two federal claims, this Court should remand her state law claims to state court.  The University disagrees, urging this Court to exercise supplemental jurisdiction.  Def.'s Opp. to Remand at 3.  Under the governing standards, the University's argument prevails.

The Supreme Court has advised that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citation omitted).  The Court added that when "the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (citation omitted); *see* 28 U.S.C. § 1367(c)(3).  In this case, however, the balance of factors weighs in favor of retaining supplemental jurisdiction over the state law claims.  Because dispositive motions have been fully briefed, it would be both an unnecessary

expenditure of judicial resources and an inconvenience for counsel for the remaining claims to be moved to another court.  Moreover, the relevant issues of state law are insufficiently novel to make comity a significant factor.  Discrimination claims premised on Maryland state law are decided routinely by this Court.  *See, e.g., Moore v. Sprint Commc'n Co., LP*, Civ. No. RDB-11-0290, 2012 WL 4480696 (D. Md. Sept. 27, 2012); *Ruffner v. MD OMG EMP LLC*, Civ. No. WDQ-11-1880, 2012 WL 3542019 (D. Md. Aug. 13, 2012).  In fact, federal law governs some of Ms. Lewis's claims.  Specifically, because the reasonable accommodation requirement adopted by the Maryland Commission on Human Relations was modeled after federal regulations of the Department of Health and Human Services implementing the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, Maryland courts "look to cases interpreting the federal statute in interpreting the Maryland Act." *Md. Comm'n on Human Relations v. Mayor & City Council*, 586 A.2d 37, 40 (Md. Ct. Spec. App. 1991) (citing *Mass Transit Admin. v. Md. Comm'n on Human Relations*, 515 A.2d 781 (Md. Ct. Spec. App. 1986)).  Comity is therefore not a significant factor, and the considerations of convenience and judicial economy weigh strongly in favor of an exercise of supplemental jurisdiction over Ms. Lewis's claims.  *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  Ms. Lewis's motion for remand is therefore denied.

### C.  Cross-Motions for Summary Judgment on State Law Claims

The University has moved for summary judgment on each of Ms. Lewis's four state law claims, each of which alleges a different violation of Md. Code, State Gov't § 20-601, *et seq.*: failure to accommodate disability; disability discrimination; discrimination based on race; and discrimination based on sex.  Ms. Lewis has filed a cross motion for summary judgment solely as

to her claim for failure to accommodate disability. For the reasons set forth below, the University's motion will be granted and Ms. Lewis's motion will be denied.

### 1. Failure to Accommodate Disability and Disability Discrimination

Ms. Lewis submits that the definition of "disability" under the Maryland discrimination laws may not comport completely with federal ADA law. *See Meade v. Shangri-La P'ship*, 424 Md. 476, 486-88 (2012) (determining that ADA definitions of "disability" do not apply in an analysis of a Howard County Code provision using the word "handicapped"). However, the definition of "disability" is not dispositive in this case, and this Court need not establish the boundaries of that definition in order to determine whether Ms. Lewis is entitled to relief under Maryland law.

To prove either failure to accommodate disability or disability discrimination, Ms. Lewis has to present a *prima facie* case that she was qualified to do her job at the time of her termination.[2] "[T]he initial burden rests with the alleged victim to establish that he is qualified to do the job at issue." *Mayor & City Council*, 586 A.2d at 41. The undisputed facts, however, establish that Ms. Lewis was not qualified to do her job at the time of her termination. "'Qualified individual with a disability' means an individual with a disability who . . . with or without reasonable accommodation can perform the essential functions of the job in question." COMAR § 14.03.02.03. When Ms. Lewis was terminated, her doctor had not cleared her to return to work. Ex. Q; Ex. Z. Attendance at work is an essential function of any job. *Rohan v.*

---

[2] The Maryland statute prohibiting disability discrimination provides, "[a]n employer may not . . . discharge . . . any individual . . . because of the individual's . . . disability unrelated in nature and extent so as to reasonably preclude the performance of the employment." Md. Code, State Gov't § 20-606(a)(1)(i); *see also Ridgely v. Montgomery Cnty.*, 883 A.2d 182, 193 (Md. Ct. Spec. App. 2005) (requiring a plaintiff alleging disability discrimination to show that "notwithstanding the disability, he was otherwise qualified for the employment or benefit, with or without reasonable accommodation"). The subsection addressing reasonable accommodation provides, "An employer may not fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee." Md. Code, State Gov't § 20-606(a)(4).

*Networks Presentations LLC*, 375 F.3d 266, 279 (4th Cir. 2004) (citing *Tyndall v. Natl. Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994)).  Moreover, nothing in the record indicates that Ms. Lewis was even able to perform work at home, if her attendance had been unnecessary.  Because Ms. Lewis could not attend work or perform work, she could not "perform the essential functions of the job in question," even with reasonable accommodation.  *See Tyndall*, 31 F.3d at 213 (holding that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."[3]); *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 594 (S.D. W.Va. 2008) (stating that it is "well-settled that an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'").  She therefore was not a "qualified individual with a disability," which precludes her recovery under either a theory of failure to accommodate or a theory of disability discrimination.

It is unclear whether Ms. Lewis contends that she should have received the reasonable accommodation of additional leave.  However, no such request for accommodation was ever made.  Ms. Lewis was clearly informed, by certified mail, that her FMLA leave would expire on July 8, 2010.  Ex. V.  After she received the letter, she contacted Human Resources to inquire about the calculation of her FMLA time.  Ex. G, at 15.  Despite her initial inquiry, Ms. Lewis did not contact Human Resources on or before July 8, 2010, either to request additional time off or to provide any information about the anticipated length of her absence.  Ex. A, at 249-50.  The University therefore did not know whether Ms. Lewis sought or required additional leave.  In the absence of any contact from Ms. Lewis to ask for an accommodation or to provide information

---

[3]Although *Tyndall* interprets the ADA, COMAR's definition of a "qualified individual with a disability" is nearly identical to the ADA's definition.  *See* 42 U.S.C. § 12111(8).  Maryland courts have used interpretations of the ADA for guidance when the ADA is substantially similar to the Maryland code at issue.  *See, e.g., Ridgely*, 883 A.2d at 193 (using the ADA when interpreting Montgomery County discrimination code as the definitions of a "qualified individual with a disability" in both were "almost identical").

regarding the date of her return, the University did not fail to grant a reasonable accommodation when it terminated her contract for abandonment.

### 2. Race and Gender Discrimination

To prove discrimination on the basis of race or gender, Ms. Lewis bears the burden of establishing either direct evidence of discrimination or a *prima facie* case of discrimination. *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 266 (Md. Ct. Spec. App. 2003). She has not met that burden.

Ms. Lewis has offered no direct evidence that any of her supervisors made any discriminatory comments or engaged in any conduct that might lead to an inference of race-based or gender-based discrimination. In absence of such direct evidence, Ms. Lewis has the burden to establish a *prima facie* case of discriminatory discharge. *Id.* The elements of a *prima facie* case are, "the employee is a member of a protected minority; was discharged from employment; was qualified for the job in which [s]he was working; and was discharged under circumstances raising a reasonable inference of intentional discrimination." *Kaydon Ring & Seal*, 818 A.2d at 277. Ms. Lewis cannot demonstrate the third or the fourth elements. With respect to her level of performance, at the time of her termination, she was unable to come to work. She had not contacted her employer to request additional leave or to provide any estimate regarding her return. Thus, it cannot be said that she was "performing at a level that met her employer's legitimate expectations." Moreover, with respect to the circumstances of her discharge, the University offered Ms. Lewis's position to an individual identified as "L.E."[4] Ex. S ¶ 4. Ms. Lewis and L.E. are both women. Ex. S ¶ 4. Ms. Lewis is African-American. L.E. self-reported her race to the University as, "African American and Native American." Ex. S ¶ 4.

---

[4] To protect its employees' privacy, the University identified certain individuals in this lawsuit using only their initials.

Ms. Lewis therefore cannot show that her position was filled by an employee outside her protected class, looking at either her race or her gender. Her failure to establish a *prima facie* case of race or gender discrimination is fatal to her claims.

**Conclusion**

For the reasons set forth above, the University's Motion for Summary Judgment is granted. Ms. Lewis's Motion for Remand and Motion for Summary Judgment are denied. A separate Order follows.

Dated:  October 18, 2012                                                     /s/
                                                                            Stephanie A. Gallagher
                                                                            United States Magistrate Judge